# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| IN RE: | |
| CHARLES S. GRIDER<br>MARKETTA B. GRIDER | CASE NO.: 10-10808(1)(7) |
| _____Debtors_____ | |
| FIRST NATIONAL BANK | AP NO.: 10-1037 |
| Plaintiff | |
| vs. | |
| CHARLES S. GRIDER<br>MARKETTA B. GRIDER | |
| _____Defendant(s)____ | |

## <u>MEMORANDUM-OPINION</u>

This matter came before the Court for trial on the Complaint of Plaintiff First National Bank of Russell Springs ("the Bank") against Defendant/Debtor Charles S. Grider ("Debtor")[1]. The Court considered the testimony of the witnesses and documentary evidence submitted at trial. For the following reasons, the Court will enter the attached

---

[1] The Complaint is also against Debtor's wife, Marketta Grider, but all claims against her were dismissed prior to the start of the trial.

Judgment in favor of the Debtor. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FINDINGS OF FACT

Debtor is a self-employed insurance agent. Prior to that he was employed as a loan officer with Key Mortgage and also served as president of Monticello Banking Companies.

Debtor has had a banking relationship with the Bank since 1999. Over the years, he has entered into a number of loans and loan renewals with the Bank. On May 29, 2008, Debtor and his wife entered into a Loan Agreement with the Bank for the purpose of consolidating and extending a number of prior loans. The total amount of that loan was $221,887.36. Debtor also signed a Security Agreement ("Agreement") and Mortgage in the amount of $221,887.36. Under the Agreement, Debtor granted a security interest in "all cattle, whether now owned or hereafter acquired including but not limited to all livestock and their product and offspring located" on Debtor's farm.

The Bank requested that Debtor execute a Financial Statement which he filled out and signed on April 30, 2008, approximately one month before the consolidation loan. Debtor indicated on the Financial Statement that he owned total assets worth $805,000. Among these assets were a $7,000 Certificate of Deposit with Monticello Bank, mutual funds of $100,000, cows and calves worth $17,000, a tractor and equipment worth $8,000.

Debtor had submitted Financial Statements to the Bank in 2005, 2006 and 2007. Each of these prior Financial Statements were handwritten by the Debtor. The Debtor

testified that he had normally used the handwritten statement from the prior year as a reference in filling out the current statement.

In April 2009, the Bank requested another Financial Statement from Debtor. This Statement, unlike the previous statements was typed. It listed a debt to Judy Baldock in the amount of $95,000. This debt originally was between Debtor and Judy Baldock's father, Mr. Blakely. The debt was secured by a Mortgage on Debtor's house.

The Baldock loan's original amount was $40,000 in 2001. Debtor testified that he later borrowed an additional $50,000 from the Baldocks. The Baldock debt, however, was not listed on Debtor's prior Financial Statements. Debtor testified that he simply "missed" listing the debt on the prior Financial Statements.

Debtor's 2008 Financial Statement listed an asset of $100,000 in mutual funds. Debtor testified prior to trial in his deposition that in 2006 he withdrew some of these funds and in 2007 he withdrew the remaining funds in the mutual fund account for living expenses. Thus, when he signed the 2008 Financial Statement he actually owned no mutual funds.

In August 2008, Debtor sold the cattle he had pledged to the Bank for $8,000 to A & S Livestock. Although Debtor had no sales records relating to the cattle, he used his bank records and his own estimates on sales and purchases so his accountant could prepare his tax returns. The funds from the A & S Livestock sale were put into his account

at the Bank.  He made a payment on the loan to the Bank from these funds and also paid a large amount of overdrafts.

As a former loan officer, Debtor testified that he was aware that the Financial Statements were relied upon by banks in determining whether loans were made.  He was also aware that proceeds of collateral used to secure a loan should be used to pay down the debt which the collateral secured.

The April 2008 Financial Statement did not list the Baldock debt.  The Baldock debt, however, was listed on the 2009 Financial Statement.  The 2009 Financial Statement also listed a $48,500 debt to the Bank of Jamestown.  Debtor had consolidated several debts he had owed to the Bank of Jamestown, his former employer.  These debts were not listed on the 2005, 2006 and 2007 Financial Statements to the Bank.

When Debtor consolidated his loans with the Bank, he met with Ron Hopper of the Bank.  Debtor and Hopper did not discuss any differences between the current and past Financial Statements nor the disposition of any collateral, although the Bank had the April 2009 Financial Statement at the time of their meeting.

Debtor testified that when the initial loan with the Baldocks was undertaken, the Baldocks were to receive a Mortgage on another piece of property he owned.  However, when the Mortgage was prepared, it mistakenly listed Debtor's 25-acre farm as security for the debt.  The Bank had been under the impression at the time the 2008 consolidation loan was made that it held the first Mortgage on the farm.

-4-

One of the reasons the Bank made the consolidation loan was to make a change in the loan payments by Debtor.  Debtor had been making annual payments, which became too difficult for Debtor to pay.  The loan was then changed to monthly payments.  It was believed that monthly payments would be easier for Debtor to sustain.

Debtor had been making the annual payment by removing money from the mutual fund.  However, in 2008 he had a significant loss of income and a significant increase in expenses.  His three daughters were entering high school and college.  He met with Hopper at the Bank to work things out.  Hopper allowed him to go six months without making interest payments on the loan.  The Bank never discussed the Financial Statement with him and never asked for additional security on the loan.  Debtor and his wife borrowed money from his wife's retirement account to make their payments.  Debtor suggested giving the Bank a deed in lieu of foreclosure on the farm in an effort to avoid bankruptcy.  The Bank said it would investigate the proposal.  The following day, the Bank informed him that it could not take the deed in lieu of foreclosure because it had just discovered the Baldock mortgage on the farm.  For this reason, the deed in lieu idea was rejected.

The farm was sold at a public auction and the Baldock debt was retired.  The Bank received $17,000 from the sale with the remainder of the amount secured by the Mortgage paid off by the insurance carrier of the attorney who had mistakenly listed the property secured by the Mortgage.

On or about May 20, 2010, Debtor and his wife filed a Voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code.

On September 30, 2010, the Bank initiated this adversary proceeding against Debtor and his wife. The Complaint asserts claims objecting to Debtor's discharge pursuant to 11 U.S.C. §523(a)(2)(B) and §523(a)(6). The Complaint also seeks denial of Debtor's discharge under 11 U.S.C. §727(a)(3) and §727(a)(5).

## CONCLUSIONS OF LAW

The Bank's first cause of action against Debtor is based on a claim under 11 U.S.C. §523(a)(2)(B). This section of the Code excepts from discharge debts incurred by use of a false statement in writing. In order to succeed on this claim, the Bank had to show the following elements regarding the writing: (1) that it was materially false; (2) respecting the debtor's or an insider's financial condition; (3) on which the creditor to whom the debtor was liable for such money, property, services or credit reasonably relied, and (4) the debtor caused to be made or published with the intent to deceive. *In re Martin*, 761 F.2d 1163, 1166 (6th Cir. 1985). The Bank had to prove the claim by the preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279 (1991).

The Bank bases its §523(a)(2)(B) claim on the Financial Statement provided by Debtor on April 30, 2008 and the check for $8,000 to Debtor from A & S Livestock for the sale of his cattle in August 2010. The check, of course, is not a materially false writing and therefore does not by itself support the claim. Further, Debtor testified that the A & S

-6-

check was deposited into his account and was used to make payments on the loan. The Bank did not present sufficient evidence on this claim.

The Financial Statement, however, was materially misleading as it omitted the Baldock debt of $95,000. The Bank's witness testified that it relied on the Financial Statement in assessing Debtor's ability to repay the loan and would not have made the loan had it known of the omitted debt.

While the Financial Statement omitting the Baldock debt appears to meet the elements of the statute, the final element is not met. The standard on this element is whether the debtor either intended to deceive or intended the statement to be false or the statement was grossly reckless as to its truth. *In re Martin*, 761 F.2d at 1166 (6th Cir. 1985); *In re Woolum*, 979 F.2d 71, 73 (6th Cir. 1992). All facts, including circumstantial evidence may be relied on in analyzing this element. *In re Branham*, 126 B.R. 283 (Bankr. S.D. Ohio 1991). There was no evidence presented that Debtor intended to deceive the Bank by the debt's omission or that the Financial Statement was grossly reckless as to its truth.

Debtor testified that he simply "missed" including the debt on the Financial Statement. Debtor had assumed the Baldock debt was secured by a piece of property other than the farm that the Bank had used as its security. The error in the description of the property in the Mortgage was the fault of the attorney who prepared the Mortgage, not Debtor. The attorney's errors and omissions insurer ultimately paid off the Bank

resulting in no harm to the Bank or its secured position.  Therefore, this mistake on the part of the Debtor, did not result in a loss to the Bank.

The Bank had the burden of proof on its claim under 11 U.S.C. §523(a)(2)(B).  The evidence at trial was insufficient to deny the Debtor a discharge on this claim.

The Bank's next claim is asserted under 11 U.S.C. §523(a)(6).  Under this claim, the Bank contends Debtor willfully and maliciously injured it.  The Bank had to prove that Debtor actually intended the injury caused, not merely intended the act that caused the injury.  *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).  Unless the "actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it," a willful and malicious injury has not been committed as defined under 11 U.S.C. §523(a)(6).  *In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999).  There was no evidence of an intentional and malicious injury as required by the statute.

The Bank also seeks to deny Debtor a discharge under 11 U.S.C. §727(a)(3). Generally speaking, discharges in bankruptcy are favored.  *In re Fioravante Settembre*, 425 B.R. 423 (Bankr. W.D. Ky. 2010).  A party seeking to revoke a debtor's discharge, therefore, bears the burden of proof to demonstrate, by a preponderance of the evidence, that debtor has violated one of the subsections of §727.  *Grogan v. Garner*, 498 U.S. 279 (1991); Fed. R. Bankr. P. 4005.

Under §727(a)(3), the Bank had to prove that Debtor "concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information . . . from which

the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case."  11 U.S.C. §727(a)(3).  In order to prove this claim, the Bank did not need to prove fraudulent intent, but Debtor, as a condition precedent to discharge, had to produce adequate financial records or sufficiently justify the failure to preserve the records.  *In re Fioravante Settembre*, 425 B.R. 423 (Bankr. W.D. Ky. 2010), citing *In re Gentile*, 123 F.Supp. 723, 726 (W.D. Ky. 1954). In the *Fioravante* case, the court noted that a sophisticated debtor has a higher level of accountability in recordkeeping. *Id.*  The adequacy of debtor's records must be determined on a case by case basis.  Considerations for the court include debtor's occupation, financial structure, education, experience, sophistication and any other circumstance that should be considered in the interest of justice.  *In re Trogdon*, 111 B.R. 655, 658 (Bankr. N.D. Ohio 1990).

Regardless of Debtor's sophistication as a former bank president and loan officer, the Bank still had the burden to prove the inadequacy of Debtor's records.  The Bank contends that Debtor should have been able to produce detailed records of his cattle sales and purchases.  Debtor testified that in 2008 he sold cattle to A & S Livestock for $8,000. This money was then placed into his account at the Bank.  Part of these funds were used to make payments on the loan and cover a number of overdrafts.  He had no records of the cattle sales.  He estimated the amount of sales for his accountant by using his checking account  records for his tax returns.  Otherwise, he had no records to show when he made

his sales or to whom the sales were made.  While Debtor could have kept better records on his cattle sales, this was not his primary occupation.  His checking account records were sufficient for his accountant to use in preparing his tax returns.  There was no evidence that Debtor intentionally concealed, falsified or destroyed his records on the cattle sales.  The Bank failed to submit sufficient evidence to prove a claim under 11 U.S.C. §727(a)(3).

The Bank's final claim to deny Debtor a discharge was made under 11 U.S.C. §727(a)(5) for Debtor's failure to satisfactorily explain the loss of assets or deficiency of assets to meet the debtor's liabilities.  The initial burden of going forward with evidence on this claim is on the objecting party who must show more than merely an allegation that the debtor failed to explain losses.   Once the objector has introduced evidence of the disappearance of substantial assets, debtor must satisfactorily explain the losses in such a manner as to convince the court of good faith and businesslike conduct.  *In re Tapp*, 339 B.R. 420 (Bankr. W.D. Ky. 2006).

Here, the Bank states Debtor failed to adequately explain the loss of collateral including the cattle, a tractor and a bushhog.  Debtor explained that he sold the bulk of cattle and deposited the proceeds in his bank account.  He paid the Bank and living expenses with the proceeds.  He further explained that 8 or 9 head of cattle died and he dumped their remains in a sink hole on the farm.  The tractor burned prior to April 2009 and the bushhog was simply unused and covered by growing weeds.  Debtor also explained that after the loss of his business he had to use his mutual funds for living

expenses. While this loss of collateral raises some questions, the Debtor's explanation and his demeanor were credible. The Bank simply did not sustain its burden of proof. The Court believes that Debtor sufficiently explained the "loss" of these assets. This case does not support a denial of discharge pursuant to 11 U.S.C. §727(a)(5). Accordingly, the Court will enter Judgment in favor of the Debtor.

## **CONCLUSION**

For all of the above reasons, the Court will enter the attached Judgment in favor of the Debtor Charles S. Grider on the Complaint of Plaintiff First National Bank of Russell Springs.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: July 26, 2011

-11-

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

IN RE:

CHARLES S. GRIDER                          CASE NO.: 10-10808(1)(7)
MARKETTA B. GRIDER

_____Debtors_____

FIRST NATIONAL BANK                        AP NO.: 10-1037

                    Plaintiff

vs.

CHARLES S. GRIDER
MARKETTA B. GRIDER

_____Defendant(s)_____

## JUDGMENT

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Judgment is hereby entered in favor of Defendant/Debtor Charles S. Grider and against the Plaintiff First National Bank of Russell Springs on its Complaint.

This is a final and appealable Judgment. There is no just reason for delay.

_____
Joan A. Lloyd
United States Bankruptcy Judge
Dated: July 26, 2011